IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                    CASE NO. 18-04678

ALEXIS PABLOS DUCLERC;                                    CHAPTER 13
MARISOL VEGA PEREZ

    Debtors

ALEXIS PABLOS DUCLERC;                                    ADV. PROC. 19-00444
MARISOL VEGA PEREZ

    Plaintiffs

vs.

COUNCIL OF OWNERS OF
CONDOMINIO WESTERNLAKE
VILLAGE 1

    Defendant

OPINION AND ORDER

This case is before the court upon Mr. Alexis Pablos Duclerc and Mrs. Marisol Vega Pérez (hereinafter referred to as "Plaintiffs" or "Debtors") *Motion for Partial Summary Judgment Pursuant to Bankruptcy Rule 7056 and Federal Rule of Civil Procedure 56 and Memorandum of Law in Support Thereof* contending that the Council of Owners Condominio Western Lake Village 1 (hereinafter referred to as the "Westernlake Village" or "Defendant") willfully violated the automatic stay provisions pursuant to 11 U.S.C. §362(a)(6) due to post-petition collection efforts, in particular by sending an invoice and an e-mail to collect pre-petition home owners' association fees included in the voluntary petition. Westernlake Village filed its *Opposition to Plaintiff's Motion for Partial Summary Judgment and Memorandum of Law in Support Thereof* arguing that there are genuine issues of material fact because at the time of the communications to Plaintiff Pablos Duclerc it did not have knowledge of Plaintiffs'

-1-

bankruptcy filing and that in any event, its communications to Plaintiff Pablos Duclerc did not violate the automatic stay provisions. The Plaintiffs filed their *Reply to Opposition filed by Defendant Westernlake to Plaintiffs' Motion for Summary Judgment* arguing that there are no genuine issues of material fact.

The Plaintiffs request this court to award them actual damages estimated in an amount no less than $20,000 including emotional damages; punitive damages in an amount no less than $10,000; and reasonable attorney's fees under 11 U.S.C. §362(k). For the reasons stated herein the Plaintiffs' *Motion for Partial Summary Judgment* is granted.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(1) and (b)(2). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Facts and Procedural Background

The Debtors filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on August 17, 2018 (lead case, No. 18-04678[1]). The Debtors in their Schedule D- Creditors Who Have Claims Secured by Property, listed Westernlake as a secured creditor in the amount of $2,686.58. The address listed for Westernlake pursuant to the creditor matrix was the following:

> Western Lake Village
> 177 Ave. Algarrobos
> Apt. Administracion
> Mayaguez, PR 00682

(lead case, Docket No. 1). On August 17, 2018, the Debtors filed their Chapter 13 plan in which they proposed to surrender the real property that secures Westernlake's claim (lead case, Docket #2, pgs. 3-4, section 3.5). On August 17, 2018, the Debtors filed a *Motion Requesting*

---

[1] References to the lead case are to the entries and documents filed in the bankruptcy case, case number 18-04678 (ESL).

*Continuation and/or Imposition of the Automatic Stay* and the same was granted on September 4, 2018 (Docket Nos. 5 & 21). The 341 meeting of the creditors was held and closed on September 19, 2018 (lead case, Docket Nos. 8 & 29). On October 3, 2018, the Debtors filed an Amended Chapter 13 Plan dated October 2, 2018 (Docket No. 31). On December 13, 2018, the Debtors' amended Chapter 13 plan was confirmed (lead case, Docket No. 39).

On October 31, 2019, the Debtors initiated this adversary proceeding alleging willful violation of the automatic stay pursuant to 11 U.S.C. §362(a)(6) and for actual damages, including costs and legal fees and punitive damages under 11 U.S.C. §362(k) stemming from the alleged willful violation. The alleged wilful violation consists of the following: (i) on July 1, 2019, Westernlake sent the Plaintiff to his mailing address of record an invoice requesting payment for pre-petition homeowner's association fees; and (ii) on July 20, 2019, the Defendant through Mrs. Alice Martínez sent an e-mail to the Plaintiff Alexis Pablos demanding the payment for the pre-petition home owner's association fees and reiterating that he was liable for the debt. The e-mail referenced the invoice for pre-petition homeowner's association fees sent to the plaintiffs/debtors. On December 30, 2019, Westernlake filed its *Answer to Complaint* (Docket No. 10). On June 17, 2020, the Plaintiffs filed their *Statement of Uncontested Facts Pursuant to District Court Local Rule 56(b) in Support to Motion for Summary Judgment* (Docket No. 15). On June 17, 2020, the Plaintiffs filed their *Motion for Partial Summary Judgment pursuant to Bankruptcy Rule 7056 and Federal Rule of Civil Procedure 56 and Memorandum of Law in Support Thereof* (Docket No. 16).

On June 30, 2020, the Defendant filed a *Motion for an Extension of Time to Answer or Oppose to Debtors' Motion for Partial Summary Judgment* and the same was granted on July 1, 2020 (Docket Nos. 17 & 18). On July 29, 2020, the Defendant filed a *Motion for Additional Extension of Time to Answer or Oppose Plaintiffs' Motion for Partial Summary Judgment* and the same was granted on July 30, 2020 (Docket Nos. 20 & 21). On August 18, 2020, Westernlake filed its *Opposition to Plaintiffs' Motion for Partial Summary Judgment and Memorandum of Law in Support Thereof* arguing that there are genuine issues of material facts

that preclude summary judgment. Westernlake argues that at the time of its communication to Plaintiff Alexis Pablos Duclerc it did not have knowledge of Plaintiffs' bankruptcy filing because the "… [n]otice issued by the Clerk and sent by regular mail to Westernlake on August 22, 2018, was sent with an incomplete and/or incorrect name and to an insufficient and/or incomplete postal address." (Docket No. 23, pg. 10). Westernlake submits that its correct name and postal address is the following:

> "Council of Owners Condominio Westernlake Village 1" or
> "Consejo de Titulares Condominio Westernlake Village 1"
> 177 Avenida Algarrobo
> Suite Administracion
> Mayaguez, PR 00682

Westernlake contends that the Unsworn Statements signed by Westernlake's President and Administrator Mr. Gilberto Ferrer and Mrs. Alice Martínez demonstrate that at the time of the July 20, 2019 communication to Plaintiff, Westernlake did not have knowledge of Plaintiffs' bankruptcy filing. Westernlake also argues that the invoice sent to Plaintiff on July 1, 2019 includes pre-petition and post-petition fees, for which the latter the automatic stay provisions cannot be enforced. "It must be underscored, that the communications sent by e-mail to Plaintiff Alexis Pablos Duclerc, do not specifically refer to either one, the pre or post-petition portion of Plaintiffs' indebtedness." (Docket No. 23, pg. 10). Westernlake argues that the Plaintiffs have failed to establish that the communication dated July 20, 2019 sent to Plaintiff Duclerc "…constitutes an 'act to collect,' since it does not provide a specific period of time to pay the fees and did not try in any form or manner, to coerce Plaintiff to pay the maintenance fees." Westernlake argues that its communication did not try in any form or manner to coerce Plaintiff to pay the maintenance fees. The communication does not even suggest any consequence in the event of non-payment (Docket No. 23, pg. 12). On August 18, 2020, the Defendant filed its *Opposing Statement and Separate Statement of Material Facts* (Docket No. 24). Subsequently, on September 21, 2020, the Plaintiffs filed their *Reply to Opposition Filed by Defendant Westernlake to Plaintiffs' Motion for Summary Judgment* by which they argued

-4-

that: (i) Westernlake had actual knowledge of the bankruptcy filing because the notice was sent to the last address provided by Westernlake to Plaintiffs, prior to the bankruptcy filing (Docket No. 28, Exhibit C); (ii) Westernlake in its opposition argues that the Notice of Bankruptcy Filing was sent to an incomplete and/or incorrect address. The Defendant contends that the Notice was sent to 177 Ave. Algarrobos Apt. Administración, Mayaguez, PR 00682-6321 and that the correct postal address is the identification of "Apt." instead of "Suite." Defendant did not allege or demonstrate that this difference caused the Notice to be undeliverable; (iii) where a creditor challenges the accuracy of a listed address, the burden falls upon the creditor to establish that the address provided by the debtor was so incorrect as to fall short of this threshold. If the creditor is able to show that the address was inadequate for the purpose intended, the burden shifts to the debtor to show, that notwithstanding the incorrect address, the creditor had notice or actual knowledge of the case. Diaz Rodriguez v. Olympic Mortg. Corp. (In re Diaz Rodriguez), 357 B.R. 691, 696 (Bankr. D.P.R. 2006) (citing In re Kanipe, 293 B.R. 750 (Bankr. E.D. Tenn. 2002); (iv) the communications sent by Westernlake to Plaintiffs contain coercive language with the intent of collecting a payment and are not considered informative under the applicable law. Monthly statements sent to a debtor do not violate the stay if the letter includes a bankruptcy disclaimer because it becomes informative. McConnie Navarro v. Banco Popular de Puerto Rico (In re McConnie Navarro), 563 B.R. 127 (Bankr. D.P.R. 2017); and (v) the invoice and the e-mail sent to Plaintiff contains no language indicating that they were sent exclusively for information purposes, and there is no bankruptcy disclaimer included in either (Docket No. 28).

Applicable Law and Analysis

*Standard for Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved."  Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198.  "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried."  Id. at 202-203.  Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.  Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact.  Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation.  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976).  When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the

nonmoving party.  Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment.  Adickes v. Kress & Co., 398 U.S. 144, 157 (1970).  See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991).  It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial.  Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial.  López, 938 F.2d at 1516.  In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case.  Celotex, 477 U.S. at 325.  See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11.  In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment.  Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987).  See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464.  A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party.  Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made.  López, 938 F.2d at 1517.  The

nonmoving party need only oppose a summary judgment motion once the moving party has met its burden.  Adickes, 398 U.S. at 159.

For the reasons explained below, this court grants the Plaintiffs' motion for partial summary judgment.

The Plaintiffs in its *Statement of Uncontested facts* include seven (7) uncontested facts (Docket No. 15). The Defendant in its *Opposing Statement* denied as drafted six of the seven of the Plaintiffs' uncontested facts. The only uncontested fact that was not opposed was that the Debtors filed a Chapter 13 bankruptcy petition on August 17, 2018 (Docket No. 24). After considering the totality of the record, the court finds that the following facts are uncontested:

1. On August 17, 2018, the Debtors filed a Chapter 13 bankruptcy petition and a Chapter 13 plan dated August 16, 2018 (Lead case, Docket Nos. 1 & 2).

2. The Debtors included Westernlake in Schedule D: Creditors Who Have Claims Secured by Property with a claim in the amount of $2,686.58 secured by the Debtors' real estate property (Lead Case, Docket No. 1, pg. 28).

3. The Debtors included Westernlake in the creditor matrix with the following address (Lead Case, Docket No. 1, pg. 69):

> Western Lake Village
> 177 Ave. Algarrobos
> Apt. Administracion
> Mayaguez, PR 00682

4. On August 22, 2018, the Bankruptcy Noticing Center sent Westernlake notice by first class mail of the Debtors' *Chapter 13 Bankruptcy Case* and of the Debtors' Chapter 13 Plan dated August 16, 2018 to the following address (Lead Case, Docket Nos. 12 and 13):

> Western Lake Village
> 177 Ave. Algarrobos
> Apt. Administracion
> Mayaguez, PR 00682-6321

5.    On December 13, 2018, an *Order Confirming Plan* was entered confirming the Debtors Chapter 13 Plan dated October 2, 2018 (Lead case, Docket No. 39).

6.    On December 16, 2018, the Bankruptcy Noticing Center sent Westernlake notice by first class mail of the *Order Confirming Plan* to the following address (Lead Case, Docket No. 40):

> Western Lake Village
> 177 Ave. Algarrobos
> Apt. Administracion
> Mayaguez, PR 00682-6321

7.    On July 20, 2019, Westernlake through Mrs. Alice Martínez sent an e-mail to the Plaintiff Alexis Pablos regarding payment of the homeowner's association fees and of the insurance (Docket No. 15, Exhibit B[2]).

*Notice Requirements*

Section 521(a)(1) provides in pertinent part: "[t]he debtor shall file a list of creditors; and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs" 11 U.S.C. §521(a)(1)(A), (B). Fed. R. Bankr. P. 1007(a) provides in pertinent part, "[i]n a voluntary case, the debtor shall file with the petition a list containing the name and address of each entity included or to be included on Schedules D, E/F, G and H as prescribed by the Official Forms." Fed. R. Bankr. P. 1007(a). As to the notices sent to the creditors, Fed. R. Bankr. P. 2002(g)(1), (2) provides in pertinent part: "[n]otices are required to be mailed under Rule 2002 to a creditor,

---

[2] The July 20, 2019 e-mail in the Spanish language reads as follows: "Estimado Sr. Duclerc. Agradecemos pague la cuota y el seguro, no es resposabilidad del condominio. A demas el Banco Popular nos indico que usted todavia es dueño y tiene que pagar todo usted. Atentamente, Sra. Alice Martinez." In the English language such e-mail would read in the following manner: "Dear Mr. Duclerc. We would appreciate that you pay the homeowner's association fees and the insurance, it is not the responsibility of the condominium. Moreover, Banco Popular has indicated that you are still the owner and must pay everything. Sincerely, Mrs. Alice Martinez" (abstract translation ours) (Docket No. 15, Exhibit B).

-9-

indenture trustee, or equity security holder shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case. For the purpose of this subdivision— (2) [e]xcept as provided in §342(f) of the Code, if a creditor or indenture trustee has not filed a request designating a mailing address under Rule 2002(g)(1) or Rule 5003(e), the notices shall be mailed to the address shown on the list of equity security holders." Fed. R. Bankr. P. 2002(g)(1), (2). Thus, if a creditor has not designated a mailing address, the notices will be mailed to the address listed by the debtor. The bankruptcy clerk will use the list of creditors disclosed by the debtor to provide to all creditors and parties in interest notice by mail of the order for relief, the meeting of creditors, the bar date to file claims, the entry of an order confirming the plan, amongst other notices. See Fed. R. Bankr. P. 2002(f). The First Circuit Bankruptcy Appellate Panel in Gonsalves v. Belice (In re Belice), 480 B.R. 199, 201 (1st Cir. B.A.P. 2012) discussed the extent of the debtor's due diligence pertaining to the accuracy of the creditors' addresses it listed to provide notice to the creditors. It stated the following:

> "As we have previously explained, the list of creditors 'submitted by the debtor must therefore contain information reasonably calculated to provide notice to the creditor.' Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval), 327 B.R. 493, 507 (B.A.P. 1st Cir. 2005); see also Anderson v. Richards (In re Anderson), Case No. 07-1328, 2009 Bankr. Lexis 4081, 2009 WL 4840871 (Bankr. D. Mass. 2009) (explaining debtor obligated to provide proper deliverable address if debtor knows it); Oxford Video, Inc. v. Walker (In re Walker), 125 B.R. 177, 180 (Bankr. E.D. Mich. 1990) ('We conclude that a creditor has been duly scheduled and listed if the address provided by the debtor is sufficiently accurate to permit delivery by the United States Postal Service to the appropriate party.'); In re Gray, 57 B.R. 927, 931 (Bankr. D.R.I. 1986) ('Case law is clear and consistent; the debtor is held to a standard of reasonable diligence in ascertaining and listing all creditors.'). The burden is on the debtors to use reasonable diligence in completing their schedules and lists… If a creditor proves that an address is incorrect, the debtor must justify the inaccuracy in preparing his schedules.' Lubeck v. Littlefield's Restaurant Corp. (In re Fauchier), 71 B.R. 212, 215 (B.A.P. 9th Cir. 1987) ." In re Belice, 480 B.R. at 201.

The standard for a willful violation of the automatic stay under §362(h) is met if there is knowledge of the stay and if the Defendant intended the actions which constituted the

violation." [3] Fleet Mortg. Group v. Kaneb, 196 F. 3d 265, 269 (1st Cir. 1999). Thus, there can be no violation of the automatic stay if the creditor was not given actual notice of the filing of the petition. "The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." Id. at 269.  "While the Bankruptcy Code provides no guidance as to what is the proper address of a creditor, the law is clear that such an address must be one at which notice or service would be reasonably calculated to comply with constitutional notions of due process." In re Kleather, 208 B.R. 406, 410 (Bankr. S.D. Ohio 1997).

This court in In re Temsco NC Inc., 537 B.R. 108, 119-122 (Bankr. D.P.R. 2015) discussed the standard for determining whether notice was reasonable and stated as follows:

> "'Courts generally consider the totality of the circumstances in determining whether notice was reasonable.' In re O'Sullivan, 488 B.R. 510, 513 (Bankr. D. Mass. 2013) citing People ex rel. Hartigan v. Peters, 871 F. 2d 1336, 1340 (7th Cir. 1989). 'What constitutes 'reasonable notice,' however, varies according to the knowledge of the parties.' In re S.N.A. Nut Co., 198 B.R. 541, 543 (Bankr. N.D. Ill. 1996). 'One circumstance to consider in evaluating the sufficiency of the notice is whether alleged inadequacies in the notice prejudiced the creditor.' In re Walker, 149 B.R. 511, 514 (Bankr.N.D.Ill.1992) citing People ex rel. Hartigan v. Peters, 871 F.2d at 1340. Another factor to consider is whether notice was given to the creditor in time for it to take meaningful action in response to the impending deprivation of rights. Id. at 514 citing Memphis Light, Gas, and Water Div. v. Craft, 436 U.S. 1, 13, 98 S. Ct. 1554, 56 L.Ed.2d 30 (1978); Armstrong v. Manzo, 380 U.S. 545 at 551-552, 85 S. Ct. 1187, 14 L.Ed.2d 62; Aacen v. San Juan County Sheriff's Dep't, 944 F.2d 691, 696-97 (10th Cir.1991); Chicago Cable Communications v. Chicago Cable Com'n, 879 F.2d 1540, 1545 (7th Cir.1989). Id.'" In re Temsco NC Inc., 537 B.R. at 119-122; see also, Quiñones v. Operating Partners Co., LLC, (In re Quiñones) 2016 Bankr. Lexis 2060, *19-20 (Bankr. D.P.R.).

"When a debtor schedules an incorrect address for the creditor, the court must ascertain: [w]here a creditor challenges the accuracy of a listed address, the burden should properly fall upon the creditor to establish that the address provided by the debtor was so incorrect as to fall

---

[3] Section 362(k)(1) was previously codified as subsection 362(h) of the Bankruptcy Code.

short of this threshold. If the creditor is able to show that the address was inadequate for the purpose intended, the burden shifts to the debtor to show that, notwithstanding the incorrect address, 'the creditor has notice or actual knowledge of the case.'" In re Kanipe, 293 B.R. 750, 755 (Bankr. E.D. Tenn. 2002) (citing In re Walker), 125 B.R. 177, 180 (Bankr. E.D. Mich. 1990)); See also; Diaz Rodriguez v. Olympic Mortg. Corp. (In re Diaz Rodriguez), 357 B.R. 691, 696-97 (Bankr. D.P.R. 2006); WebMD Practice Servs. v. Sedlacek (In re Sedlacek) 325 B.R. 202, 216-217 (Bankr. E.D. Tenn. 2005).

*Discussion*

In the instant case, the first issue before the court is whether the Defendant had notice of the *Notice of Chapter 13 Bankruptcy Case* (Lead Case, Docket Nos. 8 & 12). If Westernlake had notice of the Debtors' chapter 13 bankruptcy filing, then the court needs to determine whether Westernlake's post-petition actions constitute a violation of the automatic stay provisions pursuant to 11 U.S.C. §362(a).

The Defendant argues that the Notice of Bankruptcy Filing was sent to an incomplete and/or incorrect address and neither the "Council of Owners of Condominio Westernlake Village 1" nor the "Consejo de Titulares del Condominio Westernlake Village 1" were adequately notified of Plaintiffs' bankruptcy filing. The Defendant supports its position by referencing Mr. Gilberto Ferrer's unsworn statement (Docket No. 24, Exhibit A). As part of its statement of material uncontested facts, Westernlake includes the following: "Westernlake submits that at the time of the July 20, 2019, communication sent to Plaintiff Alexis Pablos Duclerc, neither Westernlake nor Mrs. Alice Martínez ha[d] knowledge of Plaintiffs' bankruptcy filing (See Mr. Gilberto Ferrer's and Alice Martínez González's Unsworn Statement enclosed as Exhibits A and B hereto) (Docket No. 24, pg. 3). Westernlake also denies sending the invoice dated July 1, 2019 to Plaintiff Alexis Plablos Duclerc. Westernlake in its opposition

to Plaintiffs' statement of uncontested facts includes the following: "Westernlake denies as drafted paragraph (6) of Plaintiffs' statement of uncontested facts, since Westernlake did not send any communication to Plaintiffs on July 1, 2019 (See Alice Martínez González's unsworn statement enclosed as Exhibit B hereto)." (Docket No. 24, pg. 2).

The certificate of notice of the Debtors' bankruptcy filing was sent by first class mail to Westernlake on August 22, 2018 and the Debtors' Chapter 13 plan was also sent by first class mail to Westernlake on August 22, 2018 (Lead Case, Docket Nos. 12 & 13). The court notes that pursuant to the certificate of notice regarding the Notice of Bankruptcy Filing the same discloses that it was sent by first class mail to Western Lake Village at the address included by the Debtors in their schedules and creditor matrix. Westernlake has a "+" next to its name which means that the address was corrected by inserting the zip or replacing an incorrect zip. The certificates of service also disclose that there were no bypassed recipients (Lead Case, Docket Nos. 12 & 13). If the parcel of mail was returned to the Bankruptcy Noticing Center as undeliverable then, the debtors' attorney would have received a notice of returned mail in which you can include the updated or corrected creditor address and e-mail the same through CM/ECF or mail the same to the Bankruptcy Court in Puerto Rico. The Debtors have not indicated that they received a notice of returned mail because the Notice of Bankruptcy Filing or the Chapter 13 Plan was undeliverable to Westernlake. The Order confirming the Debtors' Chapter 13 plan was sent by first class mail to Westernlake on December 15, 2018 (Lead Case, Docket No. 40). As a matter of comparison this particular certificate of notice discloses a bypassed recipient as undeliverable.

Westernlake as part of its statement of material uncontested facts, includes the following: "Westernlake submits that at the time of the July 20, 2019, communication sent to Plaintiff Alexis Pablos Duclerc, neither Westernlake nor Mrs. Alice Martínez ha[d] knowledge

of Plaintiffs' bankruptcy filing (See Mr. Gilberto Ferrer's and Alice Martínez González's Unsworn Statement enclosed as Exhibits A and B hereto) (Docket No. 24, pg. 3). The unsworn statement under penalty of perjury of Mr. Gilberto Ferrer states that he has been acting as Westernlake's President since October 2019 and that prior to the filing of the complaint he did not have knowledge of the Debtors' bankruptcy filing. The unsworn statement under penalty of perjury of Alice Martinez Gonzalez states that she has been acting as the administrator of Westernlake since January 1, 2019 and that prior to the filing of the complaint she did not have any knowledge of the Debtors' bankruptcy filing. Mrs. Alice Martinez's unsworn statement does not state that she as administrator of Westernlake did not send any communication to Plaintiffs on July 1, 2019 (Docket No. 24, Exhibit B).

The certificate of service for the notice of bankruptcy filing and of the chapter 13 plan were sent by first class mail to Westernlake on August 22, 2018 which was at least four (4) months before Alice Martinez Gonzalez started working as the administrator of Westernlake and over a year before Gilberto Ferrer assumed the position of President of Westernlake. Also, the certificate of service of the Order confirming the Debtors' chapter 13 plan was sent by first class mail on December 22, 2018 which was prior to Alice Martinez Gonzalez assuming the position of administrator and prior to Gilberto Ferrer being the President of Westernlake. The court finds that Westernlake by employing unsworn statements of an administrator and the current President of Westernlake which came to hold these positions on January 1, 2019 and October 2019, respectively, has not shifted the burden to the Debtors to establish the accuracy of the address and that the creditor had notice of the case. Both the administrator and the President of Westernlake had not assumed their respective positions at the time the Notice of Bankruptcy Filing was sent by first class mail on August 22, 2018. In the instant case, the Notice of Bankruptcy Filing was addressed to Western Lake Village and the only difference in

-14-

the address itself was that the Debtors listed and Westernlake's address is that instead of "Suite" Administracion, the Debtors used "Apt" Administracion. The court finds that this difference in Westernlake's address coupled with the certificate of notice disclosure that no recipients were bypassed render it very likely that the bankruptcy notice was actually received by Westernlake within days of August 22, 2018 which was the date it was sent by first class mail by the Bankruptcy Noticing Center. Moreover, the court notes that pursuant to a March 7, 2017 invoice from Westernlake the address used by Westernlake used "Apt." Administracion instead of "Suite" Administracion (Docket No. 28-3).  The court concludes that the address used by the Debtors was reasonably calculated to provide notice to Westernlake.

The next step in the analysis is to determine whether Westernlake violated the automatic stay provisions by sending a post-petition invoice and an e-mail.

### *Violation of the Automatic Stay*

The automatic stay in 11 U.S.C. §362(a) is one of the basic protections under the Bankruptcy Code and becomes operative by the filing of the bankruptcy petition. Soares v. Brockton Credit Union (In re Soares), 107 F. 3d 969, 971 (1st Cir. 1997). The automatic stay is extremely broad in scope and, "aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." Richard Levin & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2020). Furthermore, the automatic stay also protects creditors since it prevents the "dismemberment of a debtor's assets by individual creditors levying on the property. This promotes the bankruptcy goal of equality of distribution" Id. The automatic stay provides debtors with one of the cornerstone protections under bankruptcy law, giving debtors a "breathing room" from the pressures of their creditors. See In re Soares, 107 F. 3d at 975. Given its utmost importance in the bankruptcy system, courts "must display a certain rigor in reacting to violations of the automatic stay." In re Soares, 107 F. 3d. at 975-976.

-15-

The First Circuit in <u>Laboy v. Doral Mortg. Corp.</u> (<u>In re Laboy</u>), 647 F. 3d 367, 374 (1st Cir. 2011) stated the following regarding whether a violation is deemed "willful:" "[a] violation is 'willful' if a 'creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case.'" <u>In re Laboy</u>, 647 F. 3d. at 374 citing <u>In re McMullen</u>, 386 F. 3d 320, 330 (1st Cir. 2004). This court in the case of <u>In re Soto Rios</u>, 2009 Bankr. Lexis 2992 (Bankr. D.P.R. 2009) discussed the standard for a willful violation of the automatic under Section 362(k) and stated the following:

> "Section 362(k)(1) allows an individual to recover actual damages, costs and attorneys' fees, and in appropriate circumstances punitive damages when he or she is injured by a willful violation of the automatic stay. <u>See</u> 11 U.S.C. §362(k)(1). "A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under §362(h) is met if there is knowledge of the stay and if the Defendant intended the actions which constituted the violation." [4] <u>Fleet Mortg. Group. Inc. v. Kaneb</u>, 196 F. 3d 265, 269 (1st Cir. 1994). "The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorneys' fees be mandatory upon a finding of a willful violation  of the stay." <u>Heghmann v. Indorf</u> (<u>In re Heghmann</u>), 316 B.R. 395, 405 footnote 9 (B.A.P. 1st Cir. 2004)(quoting <u>Ramirez v. Fuselier</u> (In re Ramirez), 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995)); <u>See</u> <u>In re Atamian</u>, 344 B.R. 200, 205 (Bankr. D. Mass. 2006); <u>Parker v. Boston Univ.</u> (In re Parker), 334 B.R. 529, 536-537 (Bankr. D. Mass. 2005). Moreover, a good faith belief in a right to certain property is irrelevant in determining the willfulness in an automatic stay violation. <u>Fleet Mortg. Group Inc. v. Kaneb</u>, 196 F. 3d at 268-269. The burden is on the debtor to prove by a preponderance of the evidence that he suffered damages as a consequence of the violation of the automatic stay. <u>See</u> <u>In re Heghmann</u>, 316 B.R. at 404-405. Under Section 362(k)(1) of the Bankruptcy Code  actual damages should only be awarded if there is concrete evidence which supports with reasonable certainty the amount of the award. <u>Id.</u> At 405." <u>In re Soto Rios</u>, 2009 Bankr. Lexis 2992, *13-14.

Section 362(a)(6) stays, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(6). "The wording of this provision is somewhat similar to that of section 362(a)(1) but the provision applies to any 'act' whether or not that act is related to an 'action' or a 'proceeding.' Thus, any act taken to collect, assess or recover a prepetition claim against the debtor, whether the act is taken against the estate or against the debtor is stayed." Richard Levin & Henry J. Sommer, 3 <u>Collier on Bankruptcy</u> ¶ 362.03[8] (16th ed. 2020). "Section 362(a)(6) is intended to prevent

---

[4] Section 362(k)(1) was previously codified as subsection 362(h) of the Bankruptcy Code.

-16-

creditor harassment of the debtor in attempting to collect prepetition debts. The conduct prohibited ranges from that of an informal nature, such as by telephone contact or by dunning letters, to more formal judicial and administrative proceedings that are also stayed under subsection (a)(1)." Id. at ¶ 362.03[8][a].  The purpose of section 362(a)(6) is "to benefit a debtor by preventing harassment and frustration of rehabilitation efforts through pursuit by creditors in individual actions." In re Duke, 79 F. 3d 43, 45 (7th Cir. 1996) citing Matthews v. Rosene, 739 F. 2d 249, 251 (7th Cir. 1984).

Some courts have applied a "coercive effects" test which is basically whether a creditor "acts or fails to act, in a coercive manner, with the sole purpose of collecting that debt. This 'test' can't be found in the Code, and situations which it applies will be rare, because most act or failures to act have multiple purposes, such as minimizing risk based on creditworthiness." In re Kuehn, 563 F. 3d 289, 292 (7th Cir. 2009); Eagle v. Big Muddy River Correctional Center/Illinois Dept. of Corrections (In re Eagle), 2011 Bankr. Lexis 2352, *6 (Bankr. S.D. Ill. 2011) ("A creditor acts to collect a debt if it acts or fails to act, in a coercive manner, with the sole purpose of collecting that debt").

However, some courts have held that not all acts intended to motivate the debtor to voluntarily repay a prepetition debt are stayed under section 362(a)(6)." Richard Levin & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03[8][a]; See In re Duke, 79 F. 3d 43 (7th Cir. 1996). "Courts have also had to determine whether letters sent to debtors containing a generic disclaimer that the communication is not an attempt to collect a debt or has been sent for informational purposes only nevertheless violate the stay. The result in these cases often turns on whether other statements contained within the communication override the disclaimer by demanding or coercing payment. Another factor in the context of consumer loans being paid under a debtor's confirmed plan is whether the debtor has requested that statements be sent or the information being provided is needed by the debtor to maintain postpetition payments and is consistent with nonbankruptcy law." Id. See also; McConnie Navarro v. Banco Popular de P.R. (In re McConnie Navarro), 563 B.R. 127, 145-150 (Bankr. D.P.R. 2017).

-17-

*Written Communication*

Plaintiffs as part of its uncontested facts include the following: "On July 1, 2019, Westernlake Village I sent the Plaintiff to his mailing address of record an invoice requesting the payment for pre-petition homeowner's association fees. See Exhibit A (Docket No. 15, pg. 3). Westernlake denies sending the invoice dated July 1, 2019 to Plaintiff Alexis Plablos Duclerc. Westernlake in its opposition to Plaintiffs' statement of uncontested facts includes the following: "Westernlake denies as drafted paragraph (6) of Plaintiffs' statement of uncontested facts, since Westernlake did not send any communication to Plaintiffs on July 1, 2019 (See Alice Martínez González's unsworn statement enclosed as Exhibit B hereto)." (Docket No. 24, pg. 2). The unsworn statement under penalty of perjury of Alice Martinez Gonzalez states that she has been acting as the administrator of Westernlake since January 1, 2019 and that prior to the filing of the complaint she did not have any knowledge of the Debtors' bankruptcy filing. Mrs. Alice Martinez's in her unsworn statement does not state that she as administrator of Westernlake did not send any communication to Plaintiffs on July 1, 2019 (Docket No. 24, Exhibit B[5]). Therefore, the court finds that this statement of fact is uncontested.

The July 1, 2019 invoice sent to Plaintiff Pablos Duclerc is for the total amount of $5,510.46. This amount is comprised of the following: $1,656 for the maintenance fee for the year 2017; $1,656 for the maintenance fee for the year 2018; the monthly maintenance fees in the amount of $138.00 per month for the months of January through July 2019; surcharges for late payments in the amount of $455.40; 21 months ($20 per month) for patio maintenance for a total of $460[6]; and the insurance for common elements pursuant to Act 103 check payable to

---

[5] Mrs. Alice Martínez González's unsworn statement under penalty of perjury stated in pertinent part: "1. That my name and personal circumstances are as above stated. 2. That I have been acting as the Administrator of Westernlake since January 1, 2019. 3. That I personally sent to Plaintiff Alexis Pablos Duclerc, as the owner of record of Apartment A-101, the e-mail communication dated July 20, 2020. 4. That prior to the filing of the Complaint, I did not have any knowledge of Plaintiffs' bankruptcy filing." (Docket No. 24, Exhibit B).

[6] The court notes that the total amount for the patio maintenance should be in the amount of $420 ($20 per month for 21 months).

-18-

MAPFRE in the amount of $317.06. (Docket No. 28-2). Before the total amount the invoice includes the following language: "Pursuant to Act 103 of the Horizontal Property Law the owner of the apartment is responsible for the payment of the common element expenses and the insurance for the common elements. After the total amount, the invoice includes the following language: "Make your check payable to: Westernlake Village 1, send it to the postal address 177 Avenida Algarrobo, Suite Administracion, Mayaguez, P.R. 00682. If you have any doubts let me know: Mrs. Alice Martinez[7]." Westernlake argues that, "… the invoice sent to Plaintiff not only includes pre-petition fees due, but it also includes post-petition fees for which, the automatic stay provisions, cannot be enforced. It must be underscored, that the communications sent by email to Plaintiff Alexis Pablos Duclerc, do not specifically refer to either one, the pre or post-petition of Plaintiff's indebtedness. This issue alone, constitutes a material fact in controversy that precludes summary judgment" (Docket No. 23, pg. 10). The court finds that the invoice dated July 1, 2019 constitutes an act to collect all of the amounts owed which included pre-petition amounts owed for the entire year of 2017 in the amount of $1,656; at least seven (7) months of 2018 which is approximately $966; at least 8 months of patio maintenance which is approximately $160.00; and a portion of the total amount of late charges pursuant to Act 103 of the Horizontal Property law in the amount of $455.40. Nowhere on the invoice is there any type of disclosure/disclaimer that only the post-petition amounts are due.

Westernlake argues that the July 20, 2019 e-mail was completely informative and that the communication cannot be considered an "act to collect" because it does not provide a specific period of time to pay the fees and does not try in any form or manner, to coerce Plaintiff to pay the maintenance fees. "As this Court has recognized in similar situations, some courts have applied the "coercive effect" test. A creditor acts to collect a debt if it acts or fails to act, in a coercive manner, with the sole purpose of collecting that debt. In re Eagle, 2011 Bankr.

---

[7] The invoice states in the Spanish language the following: "SEGÚN LA LEY 103 DE PROPIEDAD HORIZONTAL EL DUEÑO DEL APARTAMENTO ES RESPONSABLE DEL PAGO DE LOS GASTOS EN COMUN Y EL SEGRO DE ELEMENTOS COMUNES. Haga su cheque a nombre de: Westernlake Village 1, enviarlo a la direccion postal 177 Avenida Algarrobo, Suite Administracion, Mayaguez, P.R. 00682. Cualquier duda me deja saber: Sra. Alice Martinez." (Docket No. 28-2).

Lexis 2352 (Bankr. S.D. Ill. 2011)." (Docket No. 23, pg. 12).  The July 20, 2019 e-mail that was sent by Mrs. Alice Martínez to Mr. Alexis Pablos Duclerc reads as follows: "Dear Mr. Duclerc. We would appreciate that you pay the homeowner's association fees and the insurance, it is not the responsibility of the condominium. Moreover, Banco Popular has indicated that you are still the owner and must pay everything. Sincerely, Mrs. Alice Martinez" (abstract translation ours) (Docket No. 15, Exhibit B[8]).  The court finds that this e-mail is not merely informative but the purpose of the same is to collect the maintenance fees and the insurance owed. However, the court finds that there is not enough information in the e-mail to ascertain what amounts in particular it refers to and what is everything that Mr. Pablos Duclerc as the owner needs to pay. In addition, there is no invoice attached to the e-mail nor is there any breakdown by line item of the different types of debt/owed like the ones disclosed in the July 1, 2019 invoice.

Conclusion

In view of the foregoing, the court finds that the address used by the Debtors was reasonably calculated to provide notice to Westernlake. The court further finds that Westernlake's invoice dated July 1, 2019 constitutes an act to collect a prepetition debt pursuant to 11 U.S.C. §362(a)(6). Thus, the Plaintiffs' motion for partial summary judgment is granted. An evidentiary hearing on the alleged damages resulting from the violation of the automatic stay is scheduled for April 6, 2021 at 2:00 pm.

SO ORDERED.

In San Juan, Puerto Rico, this 16th day of November, 2020.

Enrique S. Lamoutte
United States Bankruptcy Judge

---

[8] The July 20, 2019 e-mail in the Spanish language reads as follows: "Estimado Sr. Duclerc. Agradecemos pague la cuota y el seguro, no es resposabilidad del condominio. A demas el Banco Popular nos indico que usted todavia es dueño y tiene que pagar todo usted. Atentamente, Sra. Alice Martinez." (Docket No 15, Exhibit B).

-20-